619 F.2d 1022
 In re Matter of GRAND JURY Applicants, C. Schmidt & Sons,
Inc., Joseph J. Reinert, David Verna, David F.
Herrala, Paul P. Marchese, Charles P.
McDevitt, and Joseph H.
McDevitt, Appellants.
 No. 79-2221.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 9, 1980.
Decided April 17, 1980.
 
 Patrick W. Kittredge, Alan M. Lerner, Bruce T. Thall (argued), Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for appellants.
 Robert E. Madden, U. S. Dept. of Justice, Philadelphia, Pa., William C. Bryson, Christopher M. McMurray (argued), Attys., U. S. Dept. of Justice, Washington, D. C., for appellee.
 Before GIBBONS, ROSENN and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 C. Schmidt & Sons, Inc. (Schmidt), a Philadelphia brewer, and six of Schmidt's employees, appeal from an order of the district court denying their motions to quash federal grand jury subpoenas directed to those employees. The United States Attorney has moved to dismiss the appeal as interlocutory. We grant the government's motion to dismiss the appeals of the six employees. We reach the merits of Schmidt's appeal, and we affirm.I
 
 
 2
 According to the government, in mid-1978 a number of "short-fill" bottles of beer, manufactured by Schmidt, appeared in the marketplace. "Short-fills" are bottles containing less than the quantity indicated on the label. The grand jury began an investigation in which Schmidt initially cooperated. Later Schmidt instructed its employees not to cooperate, taking the position that the grand jury was not investigating federal crimes, and that the investigation was being conducted in bad faith for improper purposes. Faced with Schmidt's change in position the Philadelphia Strike Force of the Department of Justice caused six subpoenas ad testificandum to be served on six Schmidt employees. Schmidt and the six employees applied to the district court for an order quashing the subpoenas, asserting that the grand jury was not investigating any federal crimes, in that sale of "short-fills" violated no federal law, and that the investigation was being conducted in bad faith.
 
 
 3
 Before ruling on the motion to quash, the district court, on the authority of In re Grand Jury Proceedings (Schofield I), 486 F.2d 85 (3d Cir. 1973) and In re Grand Jury Proceedings (Schofield II), 507 F.2d 963 (3d Cir.), cert. denied, 421 U.S. 1015, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975), directed the government to furnish an affidavit disclosing the sections of the United States Code pertinent to the grand jury investigation and the reason why each witness' testimony was relevant to the investigation and not primarily for another purpose. The government complied, submitting an affidavit identifying 26 U.S.C. §§ 5671-74 (1976) (excise tax violations), 26 U.S.C. §§ 7201, 7206 (1976) (income tax violations), 26 U.S.C. § 5412 (1976) (removal of beer not in compliance with regulations), and 18 U.S.C. § 371 (1976) (conspiracy). The affidavit identified the employees as people who worked in areas of the Schmidt brewery that made it likely for them to possess knowledge on the methods used to dispose of "short-fills" and on the existence and location of records reflecting such disposition. The trial court concluded that the Schofield affidavit was sufficient, denied the application to quash, and directed the witnesses to appear before the grand jury on a specific date. When a motion for reconsideration was denied, Schmidt and the six employees filed a notice of appeal, and the district court stayed the compliance order pending appeal. Since the compliance order was stayed pending appeal the witnesses were never faced with the question whether they would disobey the order directing compliance and thus invite a contempt citation.
 
 II
 
 4
 We turn first to the government's motion to dismiss the appeal. Insofar as that motion is addressed to the appeal of the six employees it is well taken. The denial of a motion by a witness to quash a subpoena may not ordinarily be appealed under 28 U.S.C. § 1291 (1976) absent disobedience of an enforcement order and a contempt citation. United States v. Ryan, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906). The Court has recognized that the unique official status of the witness to whom the subpoena was addressed may make it inappropriate to insist upon contempt in order to achieve finality. United States v. Nixon, 418 U.S. 683, 691, 94 S.Ct. 3090, 3099, 41 L.Ed.2d 1039 (1974). The subpoenaed employees here can claim no such status, and have presented no argument for an exception to the Alexander-Cobbledick-Ryan rule. The stay of the compliance order pending appeal removed the necessity for the employees making a choice, but it did not make that order final, and the stay will end with the disposition of this appeal.
 
 
 5
 Schmidt's appeal, however, involves different considerations. It was not subpoenaed, and is in the case as an intervenor. The option of resisting compliance and standing in contempt is not available to it, and it is unlikely that a third party, even an employee, would risk a contempt citation in order to provide it with immediate review. Thus, in contrast with the Alexander-Cobbledick-Ryan rule on finality, it has been recognized that when a party, other than the one to whom a subpoena has been addressed, moves to quash the subpoena, the denial of his motion disposes of his claim fully and finally. Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918). See also Gravel v. United States, 408 U.S. 606, 608 n. 1, 92 S.Ct. 2614, 2618, 33 L.Ed.2d 583 (1972); United States v. Nixon, 418 U.S. at 691, 94 S.Ct. at 3099. In this court we have had several occasions to recognize the distinction between the Perlman and the Alexander-Cobbledick-Ryan rule. E.g. In re Grand Jury Proceedings (FMC I), 604 F.2d 798, 800 (3d Cir. 1979) (order denying client's application to quash grand jury subpoena to attorney is final); United States v. RMI Co. (N.L. Industries), 599 F.2d 1183, 1186 (3d Cir. 1979) (order denying motion for a protective order re corporate documents in possession of grand jury is final); In re Grand Jury Investigation (Intervenor A), 587 F.2d 589, 592 n. 2 (3d Cir. 1978) (order denying Congressman's motion to quash subpoena directed to Custodian of Records of House of Representatives on speech and debate clause grounds is final); In re Grand Jury Proceedings (Cianfrani), 563 F.2d 577, 580 (3d Cir. 1977) (order denying State Senator's motion to quash subpoena to custodian of records of Pennsylvania Senate is final); In the Matter of Grand Jury Impaneled Jan. 21, 1976 (Freedman), 541 F.2d 373, 377 n. 4 (3d Cir. 1976) (order denying attorney's motion to quash subpoena to prothonatary for copies of contingent fee agreements is final). We have recognized that the Alexander-Cobbledick- Ryan rule restricting appellate review is limited to situations where the contempt route to a final order is available to the appellant. Thus, where a district court granted a protective order with respect to a grand jury subpoena, we held that, in light of the unavailability to the government of the contempt route to review, Perlman, and not Alexander-Cobbledick-Ryan, controlled finality. In re Grand Jury Investigation (Sun Company), 599 F.2d 1224, 1226 (3d Cir. 1979); In re Grand Jury Empaneled Feb. 14, 1978 (Colucci), 597 F.2d 851, 858 (3d Cir. 1979). So, too, an order staying all further proceedings before a federal grand jury produces a final order. In re Grand Jury Proceedings (U. S. Steel, etc.), 525 F.2d 151, 154-156 (3d Cir. 1975). If in this case the district court had accepted Schmidt's contention that the grand jury was being used for an improper purpose and had brought its proceedings to a halt by permanently staying enforcement of its subpoenas, we have no doubt that the government would insist, on the authority of Colucci, Sun Company, and U.S. Steel, that the improper purpose claim had been finally adjudicated. Rejection of Schmidt's claim in this instance is no less final, for there is no other proceeding in which the claim of abuse of the grand jury process can be asserted. Schmidt cannot disobey an enforcement order not directed to it. If after the employees comply with the subpoenas the grand jury is disbanded without issuing an indictment, Schmidt will have been subjected to the alleged harassment of having its records removed from its place of business and its employees diverted from their business tasks without an opportunity for appellate review. Even if an indictment were returned against it Schmidt would still be foreclosed from complaining about the propriety of the methods used to obtain the evidence presented to the grand jury. See, e. g., Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Compare United States v. Serubo, 604 F.2d 807 (3d Cir. 1979) (indictment may be dismissed for prosecutorial misconduct tending to prejudice grand jury). The government does not argue that there might be another point in a future proceeding growing out of the grand jury investigation at which Schmidt's claim might be reconsidered. Thus, Schmidt is situated, insofar as finality is concerned, in the same position as the government in Colucci, Sun Company, and U.S. Steel. Review of its claim comes now or never. The order appealed from finally disposed of its claim for relief from unlawful harassment before the grand jury, and is reviewable under 28 U.S.C. § 1291 (1976).
 
 III
 
 6
 Despite its tacit acknowledgement that there is no other point in any later proceeding at which Schmidt's claim of unlawful grand jury harassment may be raised, the government urges that its Colucci, Sun Company, and U.S. Steel appeals presented different issues. They did, indeed, but the differences do not bear upon finality, and on appellate jurisdiction, but on standing, and on the merits of the claim for relief. In substance what the government seeks is a holding that there is no set of circumstances in which anyone other than a witness subjected to grand jury process will be heard to complain about grand jury abuse. Conceding that in the Perlman, Gravel, Nixon, FMC, N.L. Industries, Intervenor A, Cianfrani, and Freedman cases parties who were not initially served with grand jury subpoenas were heard with respect to the manner in which the grand jury was being conducted, it urges that in each of those cases the intervening objector had some property interest in, or claim of privilege respecting, the information sought or the information about to be disclosed. That is an accurate description of the holdings of those cases, but it does not dilute their authority in the instant appeal. Most of those cases involved claims of privilege, but in N.L. Industries, for example, we held that the applicant for a protective order against disclosure of the contents of documents already in the possession of the grand jury could insist on the protection of its property interest in confidential data incorporated in these documents. Schmidt has a property interest in the books and records which had previously been subpoenaed; a property interest differing only in degree, or value, from that asserted in N.L. Industries.[1] Schmidt also has a property interest, contractual in nature, in the services of employees presently under subpoena whose time and attention, it contends, will be diverted from its business for unnecessary and improper grand jury appearances.[2] Again, the difference between this property interest and that considered in N.L. Industries is one of degree, or value, not one of substance. The difference in degree or value goes not to Schmidt's standing to seek protection for its property interests, but to the appropriateness of affording relief when balanced against competing considerations. As we noted in N.L. Industries, "property rights must yield to some extent both to a grand jury's investigations of crime and to a defendant's sixth amendment rights to confrontation and compulsory process. A balance must be struck between these competing interests." 599 F.2d at 1190. Striking such a balance requires that the courthouse door be open in the first instance.
 
 
 7
 More fundamentally, however, we think the government's suggestion that the courts limit standing to claims of abuse of the grand jury process to persons whose property interests or privileges have been invaded is not a viable one. We can imagine cases where neither property interests, nor privileges, have been affected, but other valued rights have. For instance, a political candidate's liberty interest could be infringed by serving grand jury subpoenas upon his workers to discourage them from soliciting nominating petitions or election support. Under the government's suggested test the affected candidate would be precluded from seeking relief because neither a property interest, nor a privilege would be at stake.[3] It seems to us that the case for letting such a victim of grand jury abuse be heard is stronger, rather than weaker, than any of the cases presented by the decisions listed above where we have already accepted third party standing. Third party standing to assert claims of grand jury abuse cannot be determined by categorizing the claimed interest as one of property or privilege, but only by examining the nature of the abuse, and asking whether, and in what manner, it impinges upon the legitimate interests of the party allegedly abused.
 
 
 8
 In this case Schmidt claims that the grand jury is not investigating violations of federal law, and that the Strike Force is attempting to harass it. It asserts that it is being deprived of the time and effort of its employees. It has standing to make these claims by moving to quash the subpoenas.
 
 IV
 
 9
 On the merits, however, Schmidt's claims do not warrant relief. It initiated these proceedings by asserting, on the strength of correspondence from the Bureau of Alcohol, Tobacco and Firearms of the Treasury Department, and the Philadelphia Strike Force of the Justice Department, that the grand jury investigation was directed to "short-fills."[4] Schmidt contended in the district court: (1) that an investigation of "short-fills" was not within the subject matter jurisdiction of the grand jury; and (2) that the grand jury investigation was being utilized by the Alcohol, Tobacco and Firearms Bureau, and the Philadelphia Strike Force, in bad faith and for harassment purposes. As we noted above, the district court required the filing of a Schofield affidavit disclosing the basis for the grand jury's jurisdiction and the reason why the information sought was relevant to the investigation. After considering the affidavit, the court denied the motions to quash. We consider the Schmidt claims separately.
 
 
 10
 The sufficiency of the affidavit in meeting the contention that the grand jury was not conducting an investigation within its jurisdiction is clear. First, the affidavit states that the grand jury is investigating whether sales of "short-fills" to Schmidt distributors were properly recorded and reported as income. If they were not, Schmidt may have violated 26 U.S.C. §§ 7201, and 7206, which proscribe tax evasion and fraudulent statements on documents filed with tax returns. The affidavit also referred to possible violations of 26 U.S.C. §§ 5671-74. Schmidt asserts that if it paid excise taxes calculated in accordance with the beer bottle labels, it did not underpay, but overpaid the taxes due. Regardless of the validity of this contention, it was not underpayment of taxes which the grand jury was investigating. It was the failure to pay any taxes with which it was concerned. Finally, the affidavit characterizes the sale of "short-fill" bottles of beer as itself a criminal offense. 26 U.S.C. § 5412 provides:
 
 
 11
 Beer may be removed from the brewery for consumption or sale only in hogsheads, barrels, kegs, bottles, and similar containers, marked, branded, or labeled in such manner as the Secretary or his delegate by regulation require . . . .
 
 
 12
 Under the Secretary's regulations all bottles must show by label or otherwise their net contents. 27 C.F.R. § 245.126 (1979). Violation of these labelling requirements appears to be made a criminal offense by 26 U.S.C. § 5674(b). Schmidt has advanced a number of ingenious contentions for the inapplicability of section 5674(b), several of which might be defenses to a prosecution or reasons for dismissing an indictment. Whatever the merits of these contentions, however, none are in any way responsive to the undisputed fact that the grand jury has jurisdiction to investigate criminal offenses relating to nonpayment of income and excise taxes.
 
 
 13
 The sufficiency of the affidavit in showing that the information sought is relevant to an investigation of income tax and excise tax evasion is equally clear. As we have already noted, the employees who were subpoenaed worked in areas of the Schmidt brewery which made it likely for them to possess knowledge on the method of "short-fill" disposition and on the existence and location of records reflecting such disposition.
 
 
 14
 The district court also rejected, without an evidentiary hearing, Schmidt's claim of bad faith and harassment. The government's Schofield affidavit, filed on May 30, 1979, besides referring to the criminal laws enumerated above, and to the relevancy of the information sought, also alleges:
 
 
 15
 5. The information sought by the grand jury is rel(e)vant to a legitimate grand jury investigation and is not sought primarily for another purpose. The grand jury's subpoenas are issued solely to further their investigation and is not intended as a harassment or as a fishing expedition.
 
 
 16
 Schmidt urges that the court erred in relying on these general averments to reject its claim of bad faith. We disagree. The actions and inactions complained of, looked at individually and collectively, did not require any more specific a response than that which was made, for they in no way suggest prosecutorial bad faith. Schmidt contends that bad faith is evidenced by the fact that: (1) the government has continuously refused to engage in negotiations looking toward an offer in compromise of its possible tax liabilities; (2) the Alcohol, Tobacco and Firearms Bureau has attempted to revoke Schmidt's Brewers Bond, which is required for the manufacture of malt beverages; (3) Schmidt has been the subject, for over four and one half years and during the life of four strike force grand juries, of continuing strike force attention, none of which has yet to result in an indictment; (4) sale of "short-fills" is not a crime; and (5) if such sales are crimes no other brewery has ever been prosecuted for the same offense.
 
 
 17
 Two of these contentions may be rejected summarily for lack of relevancy. The power to compromise civil or criminal penalties arising out of violations of the internal revenue laws is vested in the Secretary of the Treasury by 26 U.S.C. § 7122(a) (1976). That section provides:
 
 
 18
 The Secretary (of the Treasury) or his delegate may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution . . . .
 
 
 19
 If the Secretary's exercise of a discretionary power to compromise is reviewable at all a question we do not address it certainly is not reviewable in the context of a motion to quash a grand jury subpoena after the matter has been referred to the Department of Justice. After a reference from the Treasury Department, the discretionary power to compromise is vested in the Attorney General, id., but plainly he has prosecutorial discretion to permit a grand jury investigation prior to exercising it. Both the Secretary's and the Attorney General's exercise of discretion is irrelevant to the bona fides of grand jury proceedings. Equally irrelevant is the contention that the Alcohol, Tobacco and Firearms Bureau attempted (unsuccessfully) to revoke Schmidt's Brewers Bond. That effort, if it took place, is unrelated to the grand jury's investigation. The grand jury could not assist or impede it.
 
 
 20
 The remaining contentions do bear upon possible bad faith in the current grand jury investigation. One of them can be rejected as legally insufficient: the contention, which the government strenuously disputes, that the sale of "short-fills" does not violate federal law. This contention is nothing more than a disagreement over the proper construction of a statute. Possibly that disagreement can be resolved prior to trial by a motion addressed to the sufficiency of the indictment. But the fact that the United States Attorney is giving the grand jury what Schmidt regards as bad legal advice about a possibly ambiguous criminal statute provides no evidence of bad faith. We do not say that a court could never consider a claim of statutory misconstruction in a motion to quash a subpoena. But clearly where the government's construction is, as here, arguable, and there are other offenses under investigation, the disputed legal issue should not be resolved on a motion to quash grand jury subpoenas. This conclusion leaves Schmidt's harassment and selective prosecution contentions. These are the only contentions which require an examination of the alleged deficiencies in the government's Schofield affidavit.
 
 
 21
 In Schofield I we observed that a presumption of regularity attaches to grand jury proceedings, and, because of that presumption, the party objecting to subpoena enforcement bears the burden of making some showing of irregularity. 486 F.2d at 93. We also noted, however, that information respecting irregularity ordinarily rests in the hands of the government enforcement agency. Balancing the need of the objecting party for information against the secrecy imposed on grand jury proceedings by Fed.R.Crim.P. 6(e), we required the government to make a preliminary showing by affidavit that each item subpoenaed was relevant to an investigation being conducted by the grand jury and properly within its jurisdiction, and was not sought primarily for another purpose. 486 F.2d at 92, 93. Neither Schofield I nor Schofield II, however, dealt with either a successive grand jury harassment contention, or a selective prosecution contention. But the same presumption of regularity attaches to the grand jury proceedings in the face of these charges, and the disparity in access to information is similar.
 
 
 22
 Neither in its initial motion, nor in its motion to reconsider, did Schmidt give any specifics about the subject matter of those grand jury investigations which took place prior to the discovery in 1978 of "short-fills" in the marketplace. The Schofield affidavit did not address the subject matter of the prior grand jury inquiries. In an unverified response to Schmidt's motion for reconsideration the United States Attorney informed the court that the prior investigations concerned possible violations of 18 U.S.C. § 1952 (1976) (interstate transportation in aid of racketeering), 18 U.S.C. § 1341 (1976) (mail fraud), 18 U.S.C. § 1962 (1976) (RICO), 18 U.S.C. § 1510 (1976) (obstruction of a criminal investigation), and 26 U.S.C. § 7201 (income tax evasion). According to the government, the only alleged offense common to the earlier and later investigations was income tax evasion. While it might have been preferable to include this information in the Schofield affidavit, the district court cannot be said to have erred in failing to quash the subpoenas because of its omission. The court was aware that the "short-fill" problem surfaced in 1978. In the absence of other evidence probative of a possible relationship between the prior grand jury proceedings and the instant investigation it was not an abuse of discretion to end the inquiry. In Schofield I we noted:
 
 
 23
 If after such disclosure (of a Schofield affidavit) the witness makes application to the district court for additional discovery in the enforcement proceeding the court must in deciding that request weigh the quite limited scope of an inquiry into abuse of the subpoena process, and the potential for delay, against any need for additional information which might cast doubt upon the accuracy of the Government's representations.
 
 
 24
 486 F.2d at 93. The same standard applies in a proceeding to quash as in a proceeding to enforce.[5] The government unequivocally denied purposeful harassment, and nothing has been suggested by Schmidt, on appeal or in the district court, that would cast doubt upon the accuracy of that representation.
 
 
 25
 The charge that no other breweries have been prosecuted for "short-fill" sales, a charge of selective prosecution, is more properly considered as a possible defense at trial based upon executive misconduct in the enforcement of criminal statutes, than as a factor bearing upon judicial supervision of the grand jury process. We have held that:
 
 
 26
 (i)n order to minimize the intrusion on the prosecutorial function and still enable a defendant effectively to raise a claim of selective prosecution, the defendant is obligated to make a threshold showing of discriminatory prosecution before an evidentiary hearing will be accorded on this issue. . . . The defendant bears the burden of proving a 'colorable entitlement', United States v. Berrigan, (3d Cir.) 482 F.2d (171) at 181, to the claim of selective prosecution. Some credible evidence must be adduced indicating that the government intentionally and purposefully discriminated against the defendant by failing to prosecute other similarly situated persons.
 
 
 27
 United States v. Torquato, 602 F.2d 564, 569-570 (3d Cir.), cert. denied, 444 U.S. 941, 100 S.Ct. 295, 62 L.Ed.2d 307 (1979). The Berrigan and Torquato cases presented the selective prosecution issue at the post-indictment stage, but we do not believe the burden on a potential defendant seeking to short-circuit a grand jury investigation at the pre-indictment stage should be any less. Nowhere is it suggested that Schmidt is the first target of an income tax or excise tax evasion investigation. That alone provides reason enough to affirm the district court's order denying the motion to quash the subpoenas without further inquiry into questions of selective prosecution for selling "short-fills". Certainly, where there is a valid, independent reason for issuing the subpoenas there is no reason to require the government to come forward with information relevant to claims of selective prosecution on other offenses charged in the indictment. We need not speculate about what the district court should have done if the sole subject of the investigation were "short-fills" and Schmidt had made a colorable claim of selective prosecution on that charge alone. Here Schmidt has not claimed that it has been selectively prosecuted on matters to which the subpoenas are plainly relevant.
 
 
 28
 Thus, we find no merit in any of the grounds advanced by Schmidt for reversing the district court.
 
 V
 
 29
 The government's motion to dismiss the appeal of Joseph J. Reinert, David Verna, David F. Herrala, Paul P. Marchese, Charles P. McDevitt, and Joseph H. McDevitt will be granted. The order denying Schmidt's motion to quash grand jury subpoenas addressed to those appellants will be affirmed.
 
 
 30
 ROSENN, Circuit Judge, concurring and dissenting.
 
 
 31
 I agree and join with the majority that the six subpoenaed employees of C. Schmidt & Sons cannot appeal the district court's denial of their motion to quash the subpoenas ad testificandum issued by the grand jury because the order appealed is interlocutory. I also concur with the majority's holding that the denial of a motion to quash a subpoena on the ground of grand jury harassment is a final order for appealability purposes. Where I part company with the majority is on the issue of the intervening employer's standing. The majority's grant of standing in this case goes beyond any prior holding of this court and I believe it enunciates a rule of standing that will adversely affect the grand jury process and unnecessarily expand the volume of appellate cases.
 
 
 32
 At the outset, it must be emphasized that the subpoenas issued in this case were ad testificandum. Most of the case law in this circuit has dealt with appealability and standing within the context of subpoenas duces tecum. See, e. g., In re Grand Jury Investigation (Sun Company), 599 F.2d 1224 (3d Cir.1979); In re Grand Jury Empaneled, Feb. 14, 1978 (Colucci), 597 F.2d 851 (3d Cir.1979). See cases Maj.Op., 1024-1025. As the majority correctly notes, in most of the cases dealing with standing to challenge grand jury subpoenas, the third-party intervenor has identified a claim of privilege which, because of the potential sacrifice of the privilege by the subpoenaed party, gives the intervenor standing to appeal. See Maj.Op. at 1026. I am willing to agree with the majority that a property interest may also serve as the basis for intervenor standing. Thus, in order to succeed in this case, I believe the employer, Schmidt, must show that it has some property interest or privilege in its employees' testimony that gives it standing to appeal from the district court's denial of the motion to quash the challenged subpoenas. I am unable to discover that such a property right or privilege exists in this case.
 
 
 33
 Schmidt has made no claim that the subpoenaed employees will give testimony which will breach any recognized privilege. Thus, if standing is present in this case, it must be in the form of some property interest or other cognizable right. The majority endeavors to develop two separate property interests to support Schmidt's standing. The majority first suggests that Schmidt has a property interest in "the books and records which had previously been subpoenaed." Maj.Op. at 1026. However, those subpoenas were issued over two years before the subpoenas presently being challenged. The majority admits in a footnote, id. n. 1, that the books and records to which it is referring are those sought by earlier grand jury subpoenas addressed to other Schmidt employees. The subpoenas presently before the court were ad testificandum and merely compelled the presence of the Schmidt employees. No subpoena duces tecum was issued either compelling Schmidt or its six subpoenaed employees to produce books and records in the appeal now before us. Thus, because the majority grants standing to Schmidt based on past subpoenas which are not now in controversy, I fail to see how any property interest in books and records is now before the court.
 
 
 34
 The second basis for standing advanced by the majority is a property interest in the "services of (its) employees presently under subpoena whose time and attention . . . will be diverted from its business for unnecessary and improper grand jury appearances." Maj.Op. at 1026 (footnote omitted). The majority's recognition of a property interest in employees' services in the grand jury context is novel and may be injudicious; I have found no prior case which supports this result. The majority asserts that the property interest in services differs only in degree or value and not substance from the property interest in confidential documents found in the N.L. Industries case, United States v. RMI Co. (N.L. Industries), 599 F.2d 1183 (3d Cir.1979). Maj.Op. at 1026. I cannot agree. Unlike N.L. Industries, which involved confidential documents obtained by the grand jury through subpoenas duces tecum, Schmidt does not assert that confidential communications will be breached if its employees are required to testify. Indeed, I would have no difficulty granting standing if such an assertion were made. My concern is that a recognition of a broad property interest in employee services will give standing to an employer in virtually every case when a grand jury issues subpoenas ad testificandum to the employees.
 
 
 35
 I would be willing to recognize a property interest in employees' services only in very limited circumstances. I believe it may be possible for a grand jury to harass an employer by repetitive issuance of subpoenas ad testificandum to key operational employees over an extended period of time and thereby disrupt the employer's operations. I would require the employer to demonstrate that the challenged subpoenas harass, or are intended to harass, and deprive it of important employee services which are disruptive of its ongoing operations. See In re Grand Jury Investigation, 459 F.Supp. 1335, 1344 (E.D.Pa.1978) (corporation's claim that fourth appearance of comptroller before grand jury insufficient to establish oppressiveness of subpoena). Under the expansive ruling of the majority, an employer would have standing to appeal even if its employees were called before the grand jury for an hour, a half-day or a day's testimony. Schmidt has made no showing that the presence of its employees before the grand jury will significantly deprive it of any property rights and I would therefore decline to grant it standing in this case.
 
 
 36
 The majority, however, proffers a third basis for standing in cases of alleged grand jury abuse. It would hold that when "other valued rights" other than a privilege or property interest are implicated, the employer-intervenor will have standing. The majority speaks vaguely of "other valued rights" but does not specify what other right or privilege Schmidt has in this case. Rather, it illustrates a speculative concern over possible grand jury harassment by an example of subpoenas directed to a political candidate's workers which would discourage them from engaging in political activity. In the example, however, it is clear that the grand jury is infringing on the fundamental rights of free speech and association protected under the first amendment. No such fundamental right is asserted by Schmidt. Indeed, the majority appears to believe that the right to be free from grand jury abuse is itself a protected right which is sufficient to confer standing upon an employer-intervenor. But such a rule would mean that standing exists in every case of alleged grand jury abuse and is tantamount to abolishing a standing requirement for intervenors in the grand jury context.
 
 
 37
 I believe the majority's blanket grant of standing invites intervention and appeal by an employer in every case where its employees are subpoenaed to testify before a grand jury. With the holding today that denial of a motion to quash a grand jury subpoena on harassment grounds is appealable as a final order, I envision adverse delays in the grand jury investigative process and a substantial escalation of litigation in this area of criminal law. If standing is available to any intervenor in every case of alleged harassment, I foresee problems even exceeding those encountered in the administrative tax summons area in which a taxpayer may intervene and appeal a challenged tax summons on the ground of IRS bad faith.[1] The stream of such appeals in this circuit alone, see, e. g., United States v. First National State Bank of New Jersey, 616 F.2d 668 (3d Cir.1980); United States v. Garden State Bank, 607 F.2d 61 (3d Cir.1979), should make us chary of an expansive standing rule in the grand jury subpoena process.
 
 
 38
 I would therefore deny standing to Schmidt to prosecute the present appeal. I sense that the majority's holding today is prompted in large part by a fear that to deny standing will leave employers powerless to challenge abuse of the grand jury process. I do not believe that this is the case. If the subpoena is duces tecum, the employer-intervenor will have standing if it can demonstrate that the material sought is privileged or that it has a property interest in the documents themselves which is threatened. If, as in this case, the subpoenas are ad testificandum, the employer-intervenor will have standing if it can demonstrate that the employee will divulge privileged material or if the subpoena of employees is being used to harass or disrupt its operations. And, in those rare circumstances where alleged grand jury abuse threatens a fundamental right such as free speech, I believe the employer may have a sufficient interest to warrant standing, but no such right has been demonstrated by Schmidt.[2]
 
 
 39
 I fear that today the majority has unnecessarily trespassed on the now-familiar proposition that courts should not interfere with grand jury process absent compelling reasons. As the Supreme Court stated in United States v. Dionisio, 410 U.S. 1, 17-18, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973):
 
 
 40
 The grand jury may not always serve its historic role as a protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor, but if it is even to approach the proper performance of its constitutional mission, it must be free to pursue its investigations unhindered by external influence or supervision so long as it does not trench upon the legitimate rights of any witness called before it.
 
 
 41
 Because I believe that Schmidt has no standing to bring the present appeal, I would not reach the merits of its claim of harassment. I would therefore dismiss the appeal brought by the six subpoenaed employees for lack of an appealable order and the appeal brought by Schmidt for lack of standing to appeal.
 
 
 
 [1]
 Earlier subpoenas duces tecum addressed to other Schmidt employees sought Schmidt's business records including bank statements, cancelled checks, cash receipt and disbursement journals, accounts receivable and payable journals, invoices, and payroll ledgers
 
 
 [2]
 Our decision in In re Grand Jury Proceedings (FMC II), 604 F.2d 804 (3d Cir. 1979), involved not a claim for protection of a property interest in employees' time and attention, but the assertion by the employer of a privilege to employee testimony. That question is not present here
 
 
 [3]
 In Branzburg v. Hayes, 408 U.S. 665, 707-708, 92 S.Ct. 2646, 2670, 33 L.Ed.2d 626 (1972), the opinion of the Court notes:
 Official harassment of the press undertaken not for purposes of law enforcement but to disrupt the reporter's relationship with his news sources would have no justification. Grand juries are subject to judicial control and subpoenas to motions to quash. We do not expect courts will forget that grand juries must operate within the limits of the First Amendment as well as the Fifth.
 See also id. at 710, 92 S.Ct. at 2671 (Powell, J., concurring). In Branzburg the Court rejected a newspaperman's claim of absolute privilege as to sources, but recognized that, nevertheless, protection of liberty interests was an appropriate object of a motion to quash. We have no reason to doubt that an employer newspaper could bring a motion to quash on grounds of harassment, even if the subpoenaed reporter, or the subpoenaed news source, did not.
 
 
 [4]
 The employees also moved to quash, and their resistance to the subpoenas was sufficient to require the production of a Schofield affidavit. Compare United States v. Oliva, 611 F.2d 23 (3d Cir. 1979) (Schofield affidavit not required when subpoena not resisted.) Because the witnesses resisted the subpoenas, and obtained a Schofield affidavit, we need not determine the showing required of a third party, such as Schmidt, to warrant the production of a Schofield affidavit
 
 
 [5]
 Cf. United States v. Garden State Nat. Bank, 607 F.2d 61 (3d Cir. 1979); United States v. Serubo, 604 F.2d 807 (3d Cir. 1979); United States v. Genser, 595 F.2d 146 (3d Cir. 1979) (Genser II ); United States v. Genser, 582 F.2d 292 (3d Cir. 1978) (Genser I )
 
 
 [1]
 The taxpayer's right to intervene and appeal in the tax summons area is provided for by Congress. See 26 U.S.C. § 7609(b)(1) (1976). Congress has made no similar provision in the grand jury context and whatever rights Schmidt has in this case depend on a judicial recognition of its interest in the grand jury subpoenas
 
 
 [2]
 Alternatively, the employer may be free to petition this court for a writ of mandamus to compel the district court to quash the challenged subpoenas. See generally In re Grand Jury Subpoenas, April, 1978, 581 F.2d 1103, 1107-08 (4th Cir.1978), cert. denied, sub nom. Fairchild Industries, Inc. v. Harvey, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979) (allegations of purposeful abuse of grand jury process insufficient to warrant mandamus relief to compel district court to conduct hearing into grand jury abuse)