VANASKIE, Circuit Judge,
concurring in part and dissenting in part.
I agree with the majority that John Doe 1 and John Doe 2 lack standing to challenge on the basis of the attorney-client privilege or work product doctrine the District Court’s disclosure orders, because neither individual can claim the protection of either exemption from disclosure. I also agree that we lack jurisdiction to review the District Court’s March 2012 Order (the “March Order”) to the extent that it requires production directly by ABC Corporation (“ABC”), because ABC may obtain appellate jurisdiction over that portion of the March Order by refusing to *162 produce the contested documents and standing in contempt.[1] I also am in complete accord with the majority’s holdings that we do have jurisdiction over ABC’s appeal from the District Court’s June 2012 Order (the “June Order”), which compels former in-house counsel of ABC to produce certain documents claimed to be protected from disclosure by ABC because the former in-house lawyers have no stake in the controversy sufficient to prompt them to risk contempt of court sanctions, and the only recourse available to ABC is a direct appeal of the June Order. Finally, I agree that the District Court correctly applied the crime-fraud exception to the attorney-client privilege in ordering production of certain documents by former in-house counsel. I write separately, however, because I believe that we have jurisdiction over ABC’s appeal from the March Order to the extent that it requires production by ABC’s outside lawyers—Blank Rome LLP (“Blank Rome”) and LaCheen, Wittels & Greenberg, LLP (“LaCheen Wittels”). I would instead reach the merits of both Orders, and I would affirm the District Court to the extent it ordered production of the documents in question by both outside and former in-house counsel.
I. Jurisdiction
A. The Perlman Doctrine
As discussed in the majority’s opinion, a witness ordered to produce documents before a grand jury may not ordinarily bring an interlocutory appeal challenging the order requiring production. See In re Grand Jury Proceedings (FMC Corp.), 604 F.2d 798, 800 (3d Cir.1979). To obtain review, the witness must instead stand in contempt and appeal the contempt order. Id.
The Supreme Court, however, carved out an exception, known as the Perlman doctrine, permitting privilege holders to bring interlocutory appeals of orders requiring production by third-party custodians. See Perlman v. United States, 247 U.S. 7, 15, 38 S.Ct. 417, 62 L.Ed. 950 (1918); see also In re Grand Jury Proceedings (Cianfrani), 563 F.2d 577, 580 (3d Cir.1977); In re Grand Jury Proceedings (FMC Corp.), 604 F.2d at 800; In re Grand Jury, 111 F.3d 1066, 1076-77 (3d Cir.1997); In re Grand Jury, 286 F.3d 153, 157 (3d Cir.2002). The Perlman doctrine rests on the premise that a non-subpoenaed privilege holder does not have the option of standing in contempt to obtain jurisdiction over an order directing production by a third-party custodian, because the order is not directed to the privilege holder. See In re Grand Jury (C. Schmidt & Sons, Inc.), 619 F.2d 1022, 1024-25 (3d Cir.1980); In re Grand Jury, 111 F.3d at 1077. Moreover, a third-party custodian in possession of subpoenaed documents will more likely comply with a district court’s order than stand in contempt to protect the privilege holder’s rights. See In re Grand Jury Proceedings (Cianfrani), 563 F.2d at 580. Because the privilege holder cannot stand in contempt or force the third-party custodian to stand in contempt, the privilege holder becomes effectively “powerless to avert the mischief of the [district court’s] order.” Perlman, 247 U.S. at 13, 38 S.Ct. 417. To prevent this result, we have held that a district court order requiring production by a third-party custodian is final as to the privilege holder, and permit the privilege *163 holder to take immediate appeal pursuant to 28 U.S.C. § 1291. See In re Grand Jury (C. Schmidt & Sons, Inc.), 619 F.2d at 1025 (“[Wjhen a party, other than the one to whom a subpoena has been addressed, moves to quash the subpoena, the denial of his motion disposes of his claim fully and finally.”) (citations omitted).
Applying the logic of Perlman to this appeal, I agree with the majority that ABC cannot appeal the portion of the District Court’s March Order requiring ABC itself to produce the documents directly. ABC is an ordinary subpoenaed party, rather than a privilege holder challenging production by a third-party, with respect to the portion of the District Court’s March Order requiring that it produce certain documents. It must therefore stand in contempt to confer jurisdiction over this part of the District Court’s order. See In re Grand Jury Proceedings (FMC Corp.), 604 F.2d at 800.
In my view, however, the portions of the District Court’s March Order requiring production by the law firms are a different matter. With respect to the portions concerning the law firms, ABC is the purported privilege holder challenging a district court order requiring production by third-party custodians. ABC cannot stand in contempt of the District Court’s order as to the law firms, because that part of the order is not directed to ABC. See In re Grand Jury (C. Schmidt & Sons, Inc.), 619 F.2d at 1024-25. ABC is thus more or less in the same position as were the privilege holders in the long line of cases in which we have applied the Perlman doctrine—ABC’s only effective recourse is a direct appeal of the order requiring third-party custodians to produce purportedly privileged records. Indeed, I see no meaningful distinction between the March and June Orders to the extent that they both compel production of purportedly privileged documents in the custody of parties other than ABC.
B. Effect of the Order Against ABC Corporation
The majority distinguishes this appeal principally on the grounds that both the law firms and ABC are subject to the District Court’s order requiring production. Therefore, in the majority’s view, ABC can obtain immediate appellate review by demanding that the law firms return the documents to it and by incurring a contempt sanction. The majority’s argument rests, in part, on its assertion that if ABC can appeal under Perlman, then any client will be able to bring an interlocutory appeal by giving its documents to its law firm.
I cannot agree with the majority’s logic. The purpose of the Perlman doctrine is to enable a privilege holder to appeal an order requiring production when he or she “ ‘lacks the opportunity to contest the subpoena by disobedience because it is not directed to him or her.’ ” In re Grand Jury, 111 F.3d at 1077 (quoting In re Grand Jury Matter (Dist. Council SS Health & Welfare Fund), 770 F.2d 36, 38 (3d Cir.1985)). That is exactly the situation that we now face with respect to the orders compelling production of the contested documents by the law firms. Because Blank Rome, rather than ABC, has physical custody of the documents, ABC cannot unilaterally stand in contempt. Regardless of ABC’s intent to stand in contempt, Blank Rome can comply with the District Court’s order and produce the documents.
I disagree that ABC has the option of obtaining jurisdiction by taking physical custody of the documents and refusing to produce them to the Government. Although the majority rules out the possibility of the Government charging the law *164 firms with obstruction of justice, it cannot rule out the possibility that the District Court will hold the law firms in contempt. The Government subpoenaed the law firms individually and moved to compel them to produce the documents. The District Court issued an order requiring production by the law firms directly. Transferring the documents to ABC will not negate the law firms’ duty to comply with the District Court’s order. See Couch v. United States, 409 U.S. 322, 329 n. 9, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973) (“The rights and obligations of the parties bec[o]me fixed when [a] summons [is] served, and [a post-summons document] transfer [does] not alter them.”) (citations omitted); In re Grand Jury Empanelled, 597 F.2d 851, 865 (3d Cir.1979) (holding that an employer cannot defeat a subpoena served on its employee by taking the requested documents from the employee and claiming that the documents are no longer in the employee’s possession); United States v. Asay, 614 F.2d 655, 660 (9th Cir.1980) (stating that a recipient of a summons cannot defeat the summons by relinquishing possession of the requested documents); United States v. Three Crows Corp., 324 F.Supp.2d 203, 206 (D.Me.2004) (“[T]he law does not allow a custodian of records to send [the requested documents] away after receiving a summons and then claim he cannot produce them, because they are no longer in his possession.”). Accordingly, if the law firms ignore the District Court’s order and instead turn over the documents to ABC, they will be just as much in contempt as ABC. See Nilva v. United States, 352 U.S. 385, 392, 77 S.Ct. 431, 1 L.Ed.2d 415 (1957) (“[A] criminal contempt is committed by one who, in response to a subpoena calling for corporation or association records, refuses to surrender them when they are in existence and within his control.”) (citations omitted); Fed.R.Crim.P. 17(g) (“The court ... may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by a federal court in that district.”); 28 U.S.C. § 1826(a) (authorizing civil contempt sanctions when “a witness ... refuses without just cause shown to comply with an order of the court to testify or provide other information”).
This matter was returned to the District Court with the understanding that the parties would be able to reach an agreement on a way to transfer the contested documents to ABC that would avoid the law firms being found in contempt. The inability of the parties to reach agreement on a mechanism for the transfer of the documents in question to the defunct corporation, coupled with the Government’s unwillingness to forego contempt sanctions against the law firms, illustrates why jurisdiction should be found to exist in relation to the District Court directives requiring production by the law firms. There is no effective mechanism to avoid the problem that Perlman resolves: the release of privileged documents by a disinterested custodian who is understandably unwilling to suffer contempt sanctions to protect a privilege held by another.
The Government’s reluctance to agree to a document transfer is not surprising. The Government wants a meaningful contempt sanction, one that threatens an individual with imprisonment or hefty monetary penalties. But ABC is defunct and no individual has thus far appeared to take on the dubious responsibility of suffering contempt to protect the attorney-client privilege.
In large measure, the problem presented in this case is attributable to the fact that ABC, the privilege holder, is no longer active and has no person within the jurisdiction of the District Court to whom the documents can be transferred. It is not a sufficient answer to the conundrum *165 created by the fact that ABC is defunct to place the matter in the very capable hands of the District Court and say you come up with “an appropriate mechanism for transferring the documents from Blank Rome to ABC Corp.” (Majority Op., typescript at 147.) Nor is it sufficient to say that there must be some person who has decided to assert the privilege, and that person should be designated to receive the documents and suffer contempt sanctions. No such person within the jurisdiction of the District Court has yet been identified, and the Government certainly would not agree to a transfer of the documents to a person who is not subject to the District Court’s jurisdiction. It is this inability to identify a person who could be held in contempt that makes the Perlman doctrine particularly applicable here.
Nor does the fact that the law-firms are ABC’s agents, and thus have a duty to return the documents to ABC upon ABC’s demand, alter the result. Although I agree in general that a client can require his or her attorney to return documents, I disagree that ABC can do so in light of the District Court’s order. A client generally cannot require his or her attorney to violate a district court order to protect his or her privilege. An attorney, after asserting all non-frivolous objections to producing client confidences, may ethically comply with a court order requiring production. See Model Rules of Prof'l Conduct R. 1.6(6) & cmt. 13 (2010); Pa. Rules of Prof'l Conduct R. 1.6 cmt. 19 (2012); see also In re Grand Jury Proceedings in Matter of Fine, 641 F.2d 199, 202 (5th Cir.1981) (stating that an attorney may ethically reveal client confidences pursuant to a court order). Because the District Court’s order requires the law firms to produce the documents, ABC cannot force the law firms to instead return the documents to it.
Moreover, I disagree that applying Perl-man when the privilege holder is also subject to the District Court’s order will enable any client to take a Perlman appeal by turning over all documents to his or her attorney. As the majority agrees, the Government may request documents by subpoena that are subject to the subpoena recipient’s legal control. See In re Grand Jury, 821 F.2d 946, 951 (3d Cir.1987) (“A party’s lack of possession or legal control over documents requested by a subpoena is normally a valid defense to a subpoena and justification for a motion to quash.”). As the Government appears to agree, a client maintains control over documents that he or she turns over to his or her current attorney, because the client may ordinarily request the documents’ return. (Appellee’s Br. 16) (“[T]he subjects [of the grand jury investigation] do not suggest that the privilege-holder corporation no longer has the ability to obtain its documents from [its lawyer].”); see also Mercy Catholic Med. Ctr. v. Thompson, 380 F.3d 142, 160 (3d Cir.2004) (holding that control under Fed.R.Civ.P. 34(a) is “the legal right or ability to obtain the documents from another source upon demand”). In the majority of future cases, the Government will be able to avoid a Perlman appeal by subpoenaing records solely from the privilege holder and obligating the privilege holder to request his or her attorney to produce the documents. Perlman jurisdiction exists in this instance because the Government chose to subpoena the law firms directly in possession of the documents, thereby subjecting them to possible contempt sanctions should they refuse to comply.
I am also concerned that the majority’s rule will effectively eviscerate the Perlman doctrine in all instances where, as here, the privilege holder can direct the custodian to produce the subpoenaed documents, but cannot necessarily prevent the custodi *166 an from releasing the documents in the event a court orders production. In such eases, the Government will have every incentive to subpoena both the privilege holder and the custodian, obtain orders against both, and use the order against the privilege holder to artificially prevent the privilege holder from taking a Perlman appeal. Creating such a loophole, in my view, is inconsistent with our Court’s interpretation of Perlman as enabling privilege holders to obtain jurisdiction when they cannot obtain jurisdiction by standing in contempt.
Finally, I am constrained to note that this jurisdictional puzzle involving a defunct corporation that has been subpoenaed to produce documents held by its law firms has tied this matter up for months. Notably, the June Order, because ABC is not subject to it, is immediately reviewable under Perlman, but the March Order is still unreviewable until procedural hurdles are surmounted. I believe, admittedly with the benefit of hindsight, that the Government has unwittingly caused a lengthy delay in the grand jury proceedings by trying to end-run the Perlman doctrine by having both the law firms and ABC be the subjects of the disclosure order. Interests of judicial economy and speedy grand jury investigations would have been better served had the Government not taken such a belt and suspender approach by subpoenaing both the privilege holder and its law firms, but instead had directed its subpoena only to the custodians of the records and allowed the Perlman doctrine full play with an adjudication on appeal of the privilege claims.
C. Effect of Current Representation by the Law Firms
Finally, although not addressed by the majority, the Government argues that the Perlman doctrine does not apply in this instance because the law firms are not “[disinterested [t]hird [pjarties” due to their current representation of subjects of the grand jury investigation. (Appellee’s Br. 15.) I believe that the Perlman doctrine applies to current attorneys and would reject this argument.
As an initial matter, our Court’s interpretation of the Perlman doctrine does not require strict disinterest, at least in the sense of requiring total non-affiliation with the privilege holder. We have instead tended to focus our analysis on whether the privilege holder “is in a position to control the [subpoenaed custodian’s] decision whether to produce the records,” and on whether the third-party’s personal stake in the matter is substantial enough for it to likely stand in contempt to protect the privilege holder’s rights. In re Grand Jury Matter, 802 F.2d 96, 99 (3d Cir.1986); see In re Grand Jury (C. Schmidt & Sons, Inc.), 619 F.2d at 1024-25 (holding that the privilege holder’s employees are third-parties under Perlman because employees are unlikely to stand in contempt to protect their employer). Applying this framework, the majority and I agree that a privilege holder’s former attorney qualifies as a third-party custodian under the Perl-man doctrine, because a former attorney is not guaranteed to stand in contempt to protect his or her former client’s privilege. See In re Grand Jury Proceedings (FMC Corp.), 604 F.2d at 800-01. I believe, as do the majority of other circuits that have addressed this issue, that there is no reason to apply a different rule to current attorneys. See, e.g., In re Grand Jury Subpoenas, 123 F.3d 695, 699 (1st Cir.1997) (“[W]e adopt the majority rule and apply the Perlman exception to those cases wherein a client seeks immediate appeal of an order compelling production of a client’s records from his attorney.”); In re Grand Jury Proceedings in Matter of Fine, 641 F.2d at 203 (holding that *167 current attorneys qualify as third-parties under Perlman); In re Grand Jury Proceedings (Gordon), 722 F.2d 303, 307 (6th Cir.1983) (“This Court ... joins the majority of other Circuits in applying the Perl-man exception in those cases wherein a client seeks immediate appeal of an order compelling testimony from his attorney.”); In re Klein, 776 F.2d 628, 632 (7th Cir.1985) (applying the Perlman doctrine to current attorneys); In re Grand Jury Proceedings (Malone), 655 F.2d 882, 885 (8th Cir.1981) (“[T]he Perlman exception is available to a client-intervenor when he is appealing an order compelling testimony or documents from his attorney.”); In re Grand Jury Proceedings, 689 F.2d 1351, 1352 n. 1 (11th Cir.1982) (explaining that the Eleventh Circuit is bound by the Fifth Circuit’s holding that attorneys are third-parties under Perlman). While a client’s interests may be more closely aligned with his or her current attorney than with a former attorney, a client cannot control whether his or her attorney chooses to stand in contempt.
Moreover, to the extent that current attorneys are “interested parties,” they, like former attorneys, are unlikely to be so interested that they will stand in contempt to protect their client’s privilege. See In re Grand Jury Proceedings in Matter of Fine, 641 F.2d at 203 (“we can say without reservation that some significant number of client-intervenors might find themselves denied all meaningful appeal by attorneys unwilling to” stand in contempt on their client’s behalf). Accordingly, because an attorney need not, and probably will not, stand in contempt to protect his or her client’s privilege, I believe that our Court’s longstanding interpretation of the Perl-man doctrine requires finding that current attorneys are third-parties.
Additionally, requiring attorneys to stand in contempt to enable their clients to appeal unnecessarily fosters conflicts of interest between attorneys and their clients. As the First Circuit explained in overruling its prior decision excluding attorneys from the Perlman doctrine, requiring attorneys to stand in contempt “pits lawyers against their clients” by requiring attorneys to choose between protecting their clients’ interests and protecting themselves against potentially serious contempt sanctions. In re Grand Jury Subpoenas, 123 F.3d at 699 (citing United States v. Edgar, 82 F.3d 499, 507-08 (1st Cir.1996)). I share the First Circuit’s view that placing attorneys in this predicament “hinders the fair representation of the client.” Id.
I am aware that the Ninth Circuit does not ordinarily permit Perlman appeals when the custodian is the privilege holder’s current attorney. See, e.g., In re Grand Jury Subpoena, 825 F.2d 231, 237 (9th Cir.1987) (declining to apply the Perlman doctrine when the custodian is the privilege holder’s current attorney). I cannot agree, however, with the Ninth Circuit’s logic. The Ninth Circuit implies that a current attorney is more likely to stand in contempt than a former attorney, because a current attorney “ ‘is both subject to the control of the person or entity asserting the privilege and is a participant in the relationship out of which the privilege emerges.’ ” Id. (quoting In re Grand Jury Subpoena Served upon Niren, 784 F.2d 939, 941 (9th Cir.1986)). This reasoning disregards the fact that a privilege holder’s control over his or her attorney does not extend to deciding whether his or her attorney stands in contempt. Because the custodian’s likelihood of standing in contempt is the relevant type of control under the Perlman doctrine, I do not find the Ninth Circuit’s reasoning to be persuasive and would hold that we have jurisdiction.
II. Merits
Instead of dismissing ABC’s appeal of the March Order for lack of jurisdiction, I *168 would affirm the District Court’s decision on the merits. For the reasons articulated by the majority, I would find that the crime-fraud exception to the attorney-client privilege is fully applicable to the documents that are the subject of the March Order. Accordingly, I would affirm both the March and the June Orders.

. ABC argues that the District Court included ABC in its order by mistake and that the District Court intended to require production only by the law firms. I agree with the majority, however, that if ABC wishes to make this argument on appeal, it must first stand in contempt.